FILED

2021 Mar-08  AM 11:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **GLENDA TUCKER,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No.: 4:20-cv-01558-ACA** |
| | ] | |
| **TRANSAMERICA LIFE INSURANCE COMPANY,** | ] | |
| | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION

After Plaintiff Glenda Tucker suffered a stroke that left her paralyzed, she paid $22,000 for modifications to her bathroom to accommodate her wheelchair and disability.  Ms. Tucker later filed a claim for reimbursement under a long-term care insurance policy she had with Defendant Transamerica Life Insurance Company ("TLIC").  TLIC denied the claim, and Ms. Tucker filed this lawsuit asserting state law claims for breach of contract, bad faith, fraud, outrage, and violations of Alabama's Deceptive Trade Practices Act.

Before the court is TLIC's motion to dismiss Ms. Tucker's amended complaint.  (Doc. 14).  Because all of Ms. Tucker's claims fail to state a claim upon which relief may be granted, the court **GRANTS** TLIC's motion and **WILL DISMISS** Ms. Tucker's claims.

# I.     BACKGROUND

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff.  *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).  The court also may consider documents outside the complaint if they are central to the plaintiff's claims and the authenticity of the document is not challenged.  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).  TLIC attached to its motion to dismiss a copy of the long-term care insurance policy.  (Doc. 14-1). This document is central to Ms. Tucker's breach of contract claim, and she has not challenged the authenticity of the document.  Therefore, the court considers the relevant terms of the long-term care insurance policy.

Ms. Tucker attached two documents to her response in opposition to TLIC's motion to dismiss.  The first is an August 21, 2020 letter from TLIC stating that it had re-opened Ms. Tucker's claim for home health benefits under the long-term care policy.  (Doc. 26-1).  The second is an August 31, 2020 letter from TLIC denying Ms. Tucker's claim for home health benefits.  (Doc. 26-2).  TLIC does not challenge the authenticity of the documents, but TLIC argues that the documents are outside the scope of the amended complaint.  (Doc. 28 at 7 & n.4).  The two letters—which concern denial of a claim for home health benefits under the policy—do not appear central to Ms. Tucker's claim that TLIC denied her claim for a bathroom remodel.

Still, Ms. Tucker references the August 21, 2020 letter in her amended complaint. (Doc. 7 at ¶ 6).  And the court's consideration of the documents does not change the analysis with respect to Ms. Tucker's breach of contract claim.  But in the interest of presenting a complete description of the facts, the court considers the two letters.

In January 2000, Ms. Tucker purchased a long-term care insurance policy from TLIC's predecessor.  (Doc. 7 at ¶ 4).   One provision of the policy titled "Alternate Care" states that if a policy holder is receiving benefits under the policy, and TLIC and the policy holder mutually agree, then TLIC "may consider paying for another form of care that is not covered" by the policy, including, "(1) the purchase of special medical equipment; (2) "the alteration of [the policy holder's] residence; or (3) other alternatives that may be appropriate for [the policy holder's] personal condition."  (Doc. 14-1 at 26–27; *see also* Doc. 7 at ¶ 4).  The TLIC agent who sold Ms. Tucker the policy told her that the Alternate Care provision meant that TLIC "would modify" Ms. Tucker's home "in any way it was needed to make" it possible for her to remain at home "due to a disabling condition."  (Doc. 7 at ¶¶ 27, 35; *see also id.* at ¶ 4).

Nineteen years after she purchased the long-term care policy, Ms. Tucker suffered a stroke that left her paralyzed on her right side.  (Doc. 7 at ¶ 5).  When she was discharged home, she was unable to navigate her wheelchair into the bathroom. (*Id.*).  In addition, Ms. Tucker's doctor ordered a number of accommodations to the

bathroom, including a roll in shower, a roll up sink, and handholds.  (*Id.*).  Ms. Tucker entered a contract with a contractor to remodel the bathroom for just over $22,000.00 and submitted a claim for reimbursement to TLIC.  (Doc. 7 at ¶¶ 5, 10).  TLIC denied the claim on August 21, 2020.  (*Id.* at ¶¶ 6, 11).  The record does not contain the denial letter associated with the bathroom remodel claim or any information about why TLIC denied the claim.

The same day TLIC denied Ms. Tucker's bathroom remodel claim, TLIC reopened a different claim—one for home health care benefits under the long-term care insurance policy.  (Doc. 7 at ¶ 6; Doc. 26-1 at 2).  After reviewing additional information associated with the claim for home health care benefits, TLIC denied that claim on August 31, 2020 because it found that Ms. Tucker did not meet the definition of a "Chronically Ill Individual" under the policy.  (Doc. 26-2 at 2).

## II.   DISCUSSION

TLIC moves to dismiss all of Ms. Tucker's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 14).

"To survive a [Rule 12(b)(6)] motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'"  *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1.    Breach of Contract

In Count One of her amended complaint, Ms. Tucker asserts a breach of contract claim against TLIC based on TLIC's failure to pay her claim for the bathroom remodel. (Doc. 7 at ¶¶ 10–12). Under Alabama law, to state a claim for breach of contract, a plaintiff must allege: "(1) the existence of a valid contract binding the parties in the action, (2) h[er] own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *City of Gadsden v. Harbin*, 148 So. 3d 690, 696 (Ala. 2013).

TLIC moves to dismiss Ms. Tucker's breach of contract claim on two grounds. First, TLIC argues that the Alternate Care provision of the long-term care policy is discretionary, and therefore, the provision is unenforceable by a breach of contract claim. (Doc. 14 at 12–13). Second, TLIC argues that Ms. Tucker did not satisfy two condition precedents related to the Alternate Care provision of the policy, and therefore, it was under no obligation to pay the claim. (*Id.*).

Under Alabama law, agreements to agree in the future are not binding on the parties. *Grayson v. Hanson*, 843 So. 2d 146, 150 (Ala. 2002). Ms. Tucker claims that TLIC did not pay for the bathroom remodel despite language in the Alternate Care provision of the long-term care insurance policy that TLIC might pay for

alteration to a policy holder's residence.  (Doc. 7 at ¶¶ 4, 6, 10).  But the plain language of the Alternate Care provision makes clear that TLIC was not obligated to pay Ms. Tucker's bathroom remodel claim.  The Alternate Care clause states that TLIC *may* consider other types of care that are not covered by the long-term care insurance policy but only *if* TLIC, the policy holder, and the policy holder's physician "mutually agree[] . . . in writing. . . ." (Doc. 14-1 at 26).  The amended complaint does not allege that TLIC, Ms. Tucker, and her physician agreed in writing that alteration of Ms. Tucker's residence was appropriate.  In the absence of that written agreement, Ms. Tucker's breach of contract claim fails a matter of law because there was no enforceable contract to provide for alterations to Ms. Tucker's home.  *See Grayson*, 843 So. 2d at 150 (agreements "are not valid . . . when the parties have merely agreed to later agree").

Even if the Alternate Care provision was enforceable, Ms. Tucker's breach of contract claim fails to state a claim because she has not demonstrated her own performance.  It is well settled that an insured has an obligation to satisfy all contractual conditions precedent to coverage.  *Nationwide Ins. Co. v. Nilsen*, 745 So. 2d 264, 267 (Ala. 1998).  Before TLIC is obligated to provide coverage under the Alternate Care provision, a policy holder must already be receiving benefits under the policy, and the parties and the policy holder's physician must mutually agree in writing to the type of alternate care.  (Doc. 14-1 at 25–26).

Ms. Tucker has not alleged that she was already receiving benefits under the long-term care policy.  Moreover, Ms. Tucker has not alleged that she, TLIC, and her physician agreed in writing to the appropriate form of alternate care.  Because neither of these condition precedents was satisfied, TLIC was not obligated to even consider—much less pay for—other forms of care, such as alterations to Ms. Tucker's bathroom.  Therefore, Ms. Tucker's breach of contract claim fails to state a claim.

Ms. Tucker claims that TLIC moves to dismiss the breach of contract claim for different reasons than stated in the August 31, 2020 letter denying the home health benefits claim and should be estopped from relying on those reasons now. (Doc. 23 at 2, 5–6).  Ms. Tucker's estoppel argument misses the mark because it operates from the faulty premise that the breach of contract claim is based on TLIC's denial of the claim for home health benefits.

Contrary to Ms. Tucker's attorney's argument in her brief (*see* doc.23 at 2), Ms. Tucker's breach of contract claim is not based on the August 31, 2020 denial of her claim for home health benefits under the long-term care insurance policy. Instead, the amended complaint alleges a breach of contract claim based on TLIC's August 21, 2020 denial of her claim for a bathroom remodel.  (Doc. 7 at ¶¶ 4, 6, 10). Nowhere in the amended complaint does Ms. Tucker allege that TLIC breached the long-term care insurance policy when it denied her claim for home health benefits

under the policy on August 31, 2020.  And Ms. Tucker may not amend her complaint through argument in a brief.  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

Accordingly, the court **GRANTS** TLIC's motion to dismiss Ms. Tucker's breach of contract claim.

### 2.    Bad Faith

In Count Two of her amended complaint, Ms. Tucker alleges that TLIC acted in bad faith when it refused to pay the claim for a bathroom remodel.  (Doc. 7 at ¶¶ 15–24).  To state a claim for bad faith under Alabama law, a plaintiff must allege facts showing, among other things, a breach of an insurance contract.  *State Farm Fire and Cas. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013) (quoting *Nat. Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982)).

As explained above, Ms. Tucker has not alleged facts stating a plausible breach of contract claim.  Therefore, her bad faith claim fails as a matter of law.  *See Brechbill*, 144 So. 3d at 258; *Poonawala v. AIG Claim Sers., Inc.*, 2006 WL 8436586, at *2 (N.D. Ala. Nov. 20, 2006) ("Breach of contract is a prerequisite to bad faith.") (citing *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 292, 304 (Ala. 1999)).

Accordingly, the court **GRANTS** TLIC's motion to dismiss Ms. Tucker's bad faith claim.

3.    Outrage

In Count Two of her amended complaint, Ms. Tucker also asserts a claim for outrage against TLIC.  (Doc. 7 at 5).  Under Alabama law, to state a claim for outrage—also known as intentional infliction of emotional distress—a plaintiff must allege that the defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it."  *Harrelson v. R.J.*, 882 So. 2d 317, 322 (Ala. 2003) (quoting *Thomas v. BSE Indus. Contractors, Inc.,* 624 So. 2d 1041, 1043 (Ala. 1993)).

Because "[t]he tort of outrage is an extremely limited cause of action," the Alabama Supreme Court historically recognized the tort in only three circumstances: "(1) wrongful conduct in the family-burial context . . . ; (2) barbaric methods employed to coerce an insurance settlement . . . ; and (3) egregious sexual harassment. . . ."  *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000) (internal citations omitted).  However, the Alabama Supreme Court has not held that "the tort of outrage is viable in only the three circumstances noted in *Potts*."  *Little v. Robinson*, 72 So. 3d 1168, 1173 (Ala. 2011); *see O'Rear v. B.H.,* 69 So. 3d 106 (Ala. 2011) (affirming judgment on an outrage claim when a teenage boy's mother asked a family physician to counsel him concerning the parents' divorce, and the physician instead prescribed addictive prescription drugs in exchange for sexual favors for a

number of years).  Still, an outrage claim "is viable only when the conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  *Little*, 72 So. 3d at 1173 (internal quotation marks and citation omitted).

Like the bad faith claim, Ms. Tucker's outrage claim is based on allegations that TLIC intentionally refused to pay her bathroom remodel claim and denied the claim without justification.  (Doc. 7 at ¶ 20–23).  As alleged in the amended complaint, and in the absence of any argument from Ms. Tucker in response to TLIC's motion to dismiss her outrage claim (*see generally* doc. 23), the court finds that this conduct is not "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency."  *Little*, 72 So. 3d at 1173.

Accordingly, the court **GRANTS** TLIC's motion to dismiss Ms. Tucker's outrage claim.

### 4.    Fraud and Promissory Fraud

In Counts Three and Seven of her amended complaint, Ms. Tucker asserts fraud and promissory fraud claims against TLIC based on alleged statements that one of TLIC's agents made to Ms. Tucker when she purchased the long-term care insurance policy in January 2000.  (Doc. 7 at ¶¶ 26–26, 34–41).

TLIC makes several arguments in support of dismissal of Ms. Tucker's fraud claim (doc. 14 at 5–10), but its argument that the fraud claims are barred by

Alabama's rule of repose is dispositive.  Therefore, the court considers that argument only.

Under Alabama law, "causes of action asserted . . . more than [twenty] years after they could have been asserted have been considered to have been extinguished by the rule of repose." *Ex parte Liberty Nat. Life Ins. Co.*, 825 So. 2d 758, 763 (Ala. 2002).  The rule of repose is broader than the statute of limitations; the passage of twenty years creates the conclusive presumption that the claim is extinguished and operates as an "absolute bar" to that claim.  *Id.* at 764–765 (citations omitted).  And, the twenty-year period "begins to run against claims the first time those claims *could* have been asserted, regardless of the claimant's notice of a claim."  *Id.* at 764 (emphasis added).

Ms. Tucker alleges that when she purchased the long-term care insurance policy in January 2020, one of TLIC's agents misrepresented to her that if a decision was made to care for a disabled policy holder at home, TLIC "would pay for the changes needed to [the] house" (doc. 7 at ¶ 4) and "modify" the "house in any way it was needed. . . ." (doc. 7 at ¶¶ 27, 35).  Because the alleged misrepresentations that forms the basis of Ms. Tucker's fraud claims occurred more than 20 years ago, her fraud claims are extinguished as a matter of law.  Indeed, Ms. Tucker concedes that based on the court's similar analysis in denying joinder of the TLIC agent (*see* doc. 21), any argument regarding her fraud claims "would be moot"  (doc. 23 at 8).

Accordingly, the court **GRANTS** TLIC's motion to dismiss Ms. Tucker's fraud and promissory fraud claims.

5.      Violation of Alabama Code § 27-12-24

In Count Four of her amended complaint, Ms. Tucker asserts a claim for statutory bad faith under Alabama Code § 27-12-24 based on TLIC's alleged pattern and practice of failing to pay or settle claims.  (Doc. 7 at ¶¶ 30–33).

TLIC moves to dismiss the claim on two grounds.  First, TLIC argues that there is no private right of action for violations of § 27-12-24.  (Doc. 14 at 13–14). Second, TLIC argues that even if there is a private right of action under the statute, the claim fails because TLIC did not breach the insurance contract at issue.  (*Id.* at 14).

"One claiming a private right of action within a statutory scheme must show clear evidence of a legislative intent to impose civil liability for a violation of the statute." *Am. Auto. Ins. Co. v. McDonald*, 812 So. 2d 309, 311 (Ala. 2001).  Alabama Code § 27-12-24 is part of Alabama's Insurance Code.  *See* Ala. Code § 27-1-1, *et seq*.  In *McDonald*, the Alabama Supreme Court explained that the text of the insurance code authorizes the insurance commissioner to bring an action against an insurer and found that "[n]othing in the Insurance Code suggests that the Legislature intended to create a private right of action" for violations of the Code.  *McDonald*, 812 So. 2d at 312 (citing Ala. Code § 27-11-4).  Because Ms. Tucker has no private

right of action to bring a claim under § 27-12-24, her statutory bad faith claim fails to state a claim.

But even assuming a private right of action exists, Ms. Tucker's statutory bad faith claim fails for the same reason her common law bad faith claim fails to state a claim—TLIC did not breach the long-term care insurance policy when it denied her claim for a bathroom remodel. *See supra* pp. 5–9

Accordingly, the court **GRANTS** TLIC's motion to dismiss Ms. Tucker's claim based on violations of Alabama Code § 27-12-24.

6.    Alabama Deceptive Trade Practices Act

In Count Eight of her amended complaint, Ms. Tucker asserts a claim against TLIC for violations of Alabama's Deceptive Trade Practices Act, Alabama Code § 8-19-1, *et seq*. (Doc. 7 at ¶¶ 42–52). In her response in opposition to TLIC's motion to dismiss, Ms. Tucker concedes that her Alabama Deceptive Trade Practices Act claim is subject to dismissal because she did not comply with the Act's prefiling demand requirement, or alternatively, because her Alabama Deceptive Trade Practices Act claim fails to state a plausible claim. (Doc. 23 at 8; *see also* Doc. 14 at 10–11).

Accordingly, the court **GRANTS** TLIC's motion to dismiss Ms. Tucker's Alabama Deceptive Trade Practices Act claim.

III.    **CONCLUSION**

The court **GRANTS** TLIC's motion to dismiss.  (Doc. 14).  The court **WILL**

**DISMISS** Ms. Tucker's claims for failure to state a claim and **DISMISS** this action

**WITH PREJUDICE**.

The court will enter a separate order consistent with this memorandum

opinion.

**DONE** and **ORDERED** this March 8, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE